UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TIMOTHY MIRAVALLE,          )
                                  )
       Plaintiff,         )
                                  )
    vs.                   )        Case No. 4:18 CV 304 JMB
                                  )
ONE WORLD TECHNOLOGIES, INC., )
d/b/a Ryobi and Ryobi Power Tools, )
                                  )
      Defendant.      )

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant One World Technologies, Inc.'s ("One World") Motions to Exclude Proffered Expert Testimony of Ed Beard ("Beard") (ECF No. 69) and for Summary Judgment on All Counts (ECF No. 71). Plaintiff Timothy Miravalle ("Miravalle") has filed a responses in opposition (ECF Nos. 70 and 77) and the issues are fully briefed. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, and based on the record, pleadings, and argument of counsel, the Court grants both motions and dismisses this matter.

**I.**     **Background**

This dispute arises from the injury to Miravalle's left hand and fingers, sustained on February 23, 2014, while operating a Ryobi table saw ("Ryobi saw") designed and manufactured by One World and sold by Home Depot, U.S.A., Inc.[1]  (Complaint, ECF No. 1 at ¶ 8)  The Ryobi

---

[1] On August 3, 2021, the Court voluntarily dismissed Defendant Home Depot, U.S.A., Inc. with prejudice (ECF No. 79), pursuant to the parties' joint stipulation of dismissal (ECF No. 78).

saw has been identified by the parties as Model #BTS12S,[2] with serial number XX100335784, and is a lightweight,[3] portable table saw, costing approximately $99 and appealing to "do-it-yourselfers" like Miravalle.  (Id.; Hornick Depo. at 24-26, 39; Miravalle Depo. at 31-33)  The Ryobi saw had a guard assembly over the blade when purchased.  (ECF No. 1 at ¶ 10)

The accident occurred when Miravalle attempted to make a freehand cut into an engineered floorboard by operating the Ryobi saw after removing the guard assembly.  (Id. ¶ 10; Miravalle's Depo. at 126)  Specifically, Miravalle attempted to cut a three-sided notch into a piece of wood flooring to fit around a door jamb.  (Miravalle's Depo. at 70-72; Exh. 4)  To make the notch, Miravalle intended to make three separate cuts:  (1) one crosscut stopped before reaching the other side of the board; (2) another crosscut parallel to first cut; and (3) a rip cut made parallel to the length of the workpiece by using his hands to lower the workpiece onto the top of the blade until the blade connected the two crosscuts.  (Id. at 47, 74, 76; Exh.5, Miravalle's Depo. Exh. 2)  Miravalle testified that he had successfully made eight of these cuts before he was injured.  (Id. at 78)

Miravalle asserts claims against One World under theories of strict liability design defect (Count I), strict liability failure to warn (Count II), and negligent design and warn (Count III).

One World moves to exclude Beard's expert opinions pursuant to Federal Rules of Evidence Rule 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and for summary judgment, arguing among other things that Miravalle cannot prove the Ryobi saw was

---

[2] "This is one of the smallest and lightest entry-level saws produced by [One World Technologies, Inc. d/b/a Techtronic Industries Power Equipment ("TTIPE")] and is significantly different than many of the other saws TTIPE sells."  (Declaration of Andrew Hornick at ¶ 5)  "There are generally recognized categories of table saws – benchtop saws, contractor saws, and cabinet saws.  Cabinet and contractor saws are large and designed for use in an industrial or large workshop setting such as a woodworking shops."  Id. at 83 n.2.

[3] The Ryobi saw weighs around thirty-five pounds.  (Hornick depo. at 25)

defective because it failed to include an available flesh-sensing or similar type technology and lacked proper warnings and operating instructions in the operator's manual.  Likewise, One World argues that  Miravalle cannot prove the Ryobi saw was unreasonably dangerous because it lacked flesh-sensing technology as a result of Beard failing to test to determine whether his alternative design would have prevented Miravalle's injury; or whether the flesh-sensing technology was technologically or economically feasible on the Ryobi Model BTS12S.  Finally, One World contends that Beard's warning opinions regarding the operator's manual are unreliable under Daubert because Beard failed to draft or propose a warning he believed would have prevented Miravalle's incident and failed to test the effectiveness of any additional warning.

## II.   **Beard's Opinions**

Miravalle retained Beard, a mechanical and agricultural engineer, as an expert witness to provide opinions in support of his claims of strict liability design defect, strict liability failure to warn, and negligence.[4]  Beard has a bachelor's degrees in Mechanical and Agricultural Engineering from Arkansas State University and completed training in mechanical engineering, including material on safety in the design, manufacture, and use of mechanical devices.  (Beard Affidavit at ¶ 3)  Beard is licensed by examination as a Professional Engineer in five states, as well as all states permitting reciprocity, and he has a National Council of Examiners for Engineering and Surveying registration.  Beard is also a member of the American Society of Mechanical Engineers, Society of Automotive Engineers, and National Safety Council.  Beard routinely attends continuing education and professional competency seminars on mechanical engineering.  (Id.)  Beard's

---

[4]  Beard's preliminary expert report fails to disclose the compensation being paid to him; fails to contain a listing of cases wherein he has testified in the past; fails to list his qualifications; and fails to contain an updated curriculum vitae, despite the indication that the same was attached, as required by Rule 26(a)(2)(B)(i)-(vi).

3

experience with table saws includes developing warnings and implementing operating procedures and planned maintenance programs.  (Id. at ¶ 8)  Beard averred that he is familiar with the operation of the Ryobi saw and has used similar saws on many of his own projects.  (Id. at ¶¶ 11-12)  Since 2008, Beard has been familiar with and evaluated SawStop flesh-sensing technology and has observed the Ryobi saw being operated and has personally operated the Ryobi saw.  (Id. at ¶ 12)  Finally, Beard averred that he personally inspected the Ryobi saw on February 14, 2019.  (ECF No. 70-1, Beard Preliminary Report at 8)

Beard would opine that the Ryobi saw was unreasonably dangerous and defective because the Ryobi saw failed to include a flesh-sensing or similar type technology which was both technologically and economically feasible, would not have affected the utility of the Ryobi saw, and would have prevented Miravalle's incident.  Beard would also opine that the Ryobi saw lacked proper warnings and operating instructions in the operator's manual.  In his response in opposition to exclude Beard's proffered expert testimony, Miravalle attaches Beard's affidavit.[5]

**A.  Design Defect Opinion**

Beard opined that the Ryobi saw failed to include available flesh-sensing technology or similar type technology, "which rendered the subject table saw defective and unreasonably dangerous and directly led to the accident that injured Mr. Miravalle."  (Beard Preliminary Report

---

[5] The Court has a concern about Beard's affidavit because there is no provision in the federal rules that permits a party to buttress or strengthen an expert's previously submitted report. While Rule 26 specifically authorizes a party to supplement its expert report, the rule permitting supplementation is limited.  Previously unsworn statements, and Beard's expert reports, may be used if they are subsequently reaffirmed under oath.  See, e.g., DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach, 576 F.3d 820, 825-26 (8th Cir. 2009) (holding that district court did not abuse its discretion in considering an unsworn expert report accompanied by an affidavit at the summary judgment stage).

at 20)  Beard further opined that the flesh-sensing technology was "both technologically and economically feasible and would not have affected the utility of the machine."  (Id.)

Beard's explanation regarding flesh-sensing technology was based on an April 30, 2013, report of an expert[6] in another lawsuit.  Beard described the technology as follows:

> "[T]he contact detection system works by recognizing differences between the electrical properties of wood (or any non-conductive material) and a person.  The system generates an electrical signal on to the blade, and then monitors that signal for changes caused by contact with a person's body.  The signal remains unchanged when the blade cuts wood because of the small inherent capacitance and conductivity of wood.  When a person touches the blade, the signal immediately changes because of the relatively large inherent capacitance and conductivity of the person's body.  The reaction system acts to minimize the injury when contact is detected.  In a table saw, the reaction system uses a spring to push a brake pawl in to the teeth of the blade to stop the blade from spinning.  The brake pawl is part of a replaceable cartridge.  The action of stopping the blade also causes the blade to retract and drop below the table.  In a table saw with a 10-inch diameter blade, the blade typically stops within approximately 3 milliseconds.  As a result, the person accidently contacting a spinning blade equipped with the SawStop technology typically would receive only a small nick.

(Id. at 18)  Beard also claimed that incorporating the flesh-sensing technology in the Ryobi saw was economically feasible, increasing materials and manufacturing costs by only $55.00.  (Id.)

## B.  Warning Opinion

Beard also opined that One World's "failure to provide proper warnings and operating instructions in the operating manual regarding making this type of foreseeable cut, rendered the subject table saw defective and unreasonably dangerous, which further contributed to the accident that caused Mr. Miravalle's injuries."  (Id.)  Beard further opined that "[t]he type of cut made by Mr. Miravalle was a common cut required when installing residential flooring materials," but

---

[6] Beard relied on a report from Dr. Stephen Gass ("Dr. Gass") who developed "SawStop" technology and products.  (Beard Affidavit at ¶ 19)

"[t]he operator's manual did not give instructions on how to make this type of common cut and also did not provide warnings stating that this cut was prohibited with the subject saw." (Id. at 19)

III.   **Legal Standards**

    **A.  Standards for Miravalle's Claims**

No dispute exists amongst the parties on whether Missouri law applies.  See Dorman v. Emerson Elec. Co., 23 F.3d 1354, 1358 (8th Cir. 1994) (applying Missouri law).  The parties applied Missouri law to Miravalle's claims so the Court will do so as well.

Under Missouri law, to prevail on a strict liability products defect claim, Miravalle "must prove that the product was defective and dangerous when put to a reasonable use anticipated by the manufacturer and that the plaintiff sustained damage as a direct result of the defect." Peters v. General Motors Corp., 200 S.W.3d 1, 17 (Mo. Ct. App. 2006).  A design defect claim involves a product that is unreasonably dangerous because of the nature of its design, regardless of whether a warning about the product is given.  Moore v. Ford Motor Co., 332 S.W.3d 749, 757 (Mo. 2011)." "The focus is on the product and its condition when sold, not on the manufacturer's conduct." Johnson v. Auto Handling Corp., 523 S.W.3d 452, 466 (Mo. 2017).

Claims of strict liability failure to warn must establish causation by showing "that a warning would have altered the behavior of the individuals involved…." Moore v. Ford Motor Co., 332 S.W.3d 749, 762 (Mo. banc 2011) (internal quotation omitted).  The elements of a strict liability failure to warn claim are:  (1) the defendant sold the product in question in the course of its business; (2) the product was unreasonably dangerous at the time of sale when used as reasonably anticipated without knowledge of its characteristics; (3) the defendant did not give adequate warning of the danger; (4) the product was used in a reasonably anticipated manner; and (5) the plaintiff was damaged as a direct result of the product being sold without an adequate

6

warning.  Id. at 756.  A failure to warn claim can concern a missing warning or a warning that is deficient.  Nesselrode v. Exec. Beechcraft, Inc., 707 S.W.3d 371, 382 (Mo. banc 1986).  The key issue is a failure to warn case is whether the information included with the product "effectively communicates to the consumer or user the dangers that inhere in the product during normal use and the dangerous consequences that can or will result from the misuse or abnormal use of the product."  Id.  In addition, "a warning, no matter how well stated or placed, is inadequate if it has no reasonable likelihood of reaching a foreseeable user[.]"  Johnson v. Medtronic, Inc., 365 S.W.3d 226, 235 (Mo. Ct. App. 2012).  In Missouri, it is presumed that that a warning will be heeded by the user.  Johnson, 365 S.W.3d at 232.

In Missouri, in an action for negligence, the plaintiff must establish that:  "(1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury."  See Martin v. City of Wash., 848 S.W. 2d 487, 493 (Mo. banc 1993).  The threshold matter in a negligence action is the existence of a duty.  Carman v. Wieland, 406 S.W.3d 70, 76 (Mo. Ct. App. 2013).  "The existence of a duty is unique among the elements of negligence because it is a question of law for the court to decide and hence this question is central to determining whether a party has a right to judgment as a matter of law."  Id. (citation omitted). See also Morrison v. Kubota Tractor Corp., 891 S.W.2d 422, 425 (Mo. Ct. App. 1994) ("In a negligence action, whether a duty exists is entirely a question of law for the court.").

Claims of "negligent failure to warn – and by analogy negligent design defect – focus [] on what the manufacturer knew rather than on the product."  Id. at 466.  "To prove a negligent design claim under Missouri law, a plaintiff must show that the defendant breached its duty of care in the design of a product and that this breached caused the injury."  Stanley v. Cottrell, Inc., 784 F.3d

7

454, 463 (8th Cir. 2015); see also Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc., 700

S.W.2d 426, 431 (Mo. 1985) (elements of negligence claim under Missouri law).

For a negligent failure to warn claim, a plaintiff must prove that the defendant designed the

product at issue, the product had a defect or hazard, and that the plaintiff sustained damage as a

direct result of the defendant's failure to adequately warn of the risk of harm from the alleged

defect or hazard.  Johnson, 523 S.W.3d at 465-66.  The causation element involves two separate

requirements.  Arnold v. Ingersoll-Rand Co., 834 S.W.2d 192, 194 (Mo. 1992).  "First, the

plaintiffs' injuries must be caused by the product from which the warning is missing." Id. "Second,

the plaintiffs must show that a warning would have altered the behavior of the individuals involved

in the accident."  Id.

To establish a claim for negligently supplying a dangerous instrumentality, the plaintiff

must establish that the defendant supplied an instrumentality for use that had a defect or hazard

and was therefore dangerous when put to a reasonably expected use, the instrumentality was put

to a reasonably expected use, the defendant had no reason to believe that those for whose use the

instrumentality was supplied would realize its dangerous condition, the defendant knew or had

information from which it, in the exercise of ordinary care, should have known of the dangerous

condition, the defendant failed to adequately warn of the dangerous condition and was thereby

negligent and, as a direct result of the negligence, the plaintiff sustained damage.  Bland v. IMCO

Recycling, Inc. 67 S.W.3d 673, 682-83 (Mo. Ct. App. 2002).

Whether proceeding under a theory of strict liability or negligence, a plaintiff must prove

the defect in the product or the defendant's negligence in the design proximately caused the

plaintiff's injuries.  Strong v. American Cyanamid Co., 261 S.W.3d 493, 506 (Mo. Ct. App. 2007),

overruled on other grounds by Badahman v. Catering St. Louis, 395 S.W.3d 29 (Mo. 2013).

Without evidence of a defect, a plaintiff cannot establish that a defect proximately caused his injuries.  In such circumstances, summary judgment for the defendant manufacturer is appropriate.  Pro Serv. Auto, L.L.C. v. Lenan Corp., 469 F.3d 1210, 1216 (8th Cir. 2006).

Missouri law does not require expert testimony in a products liability case unless the determination of a relevant factual issue involves information so complex or technical that no fact finder could resolve the issue without help.  Pro Serv. Auto, 469 F.3d at 1214.  Whether the subject Ryobi saw was unreasonably dangerous requires consideration of topics outside the general knowledge of a lay jury.  See Pro Serv. Auto, 469 F.3d at 1214 (requiring expert testimony on causation for the plaintiff's strict products liability claim given the complexities involved in the operation of the equipment at issued); Wood v. Robert Bosch Tool Corp., 2015 WL 5638050, at *6 (E.D. Mo. Sept. 24, 2015) (requiring expert testimony on causation in case alleging defective design of consumer table saw).

In addition, "Missouri courts have … concluded that [w]arnings and how people react to warnings are arguably subjects about which persons having no particular training are incapable of forming accurate opinions."  Bachtel v. TASER Int'l, Inc., 747 F.3d 965, 970 (8th Cir. 2014) (internal quotation omitted); see Bryant v. Laiko Int'l Co., 2006 WL 2788520, at *10 (E.D. Mo. Sept. 26, 2006) (recognizing "Missouri courts have always allowed, and often required expert testimony" on the question of failure to warn).

Miravalle offers Beard's expert opinions to support his allegations that the Ryobi saw was defectively designed, unreasonably dangerous, and failed to provide warnings.  For the following reasons, the Court excludes these opinions as unreliable.  Because Miravalle has no other evidence in support of his claims, the Court grants One World's summary judgment on Miravalle's claims.

### B.  Standard for Admission of Expert Testimony

Federal law governs the admissibility of expert testimony in diversity cases in federal court. Clark ex rel. Clark v. Heidrick, 150 F.3d 912, 914 (8th Cir. 1998).  Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.  Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 147 (1999).  The party offering a witness under Rule 702 bears the burden to establish by preponderance of evidence:  (a) the expert's specialized knowledge will assist the jury; (b) the expert's testimony is based on sufficient facts and data; (c) the expert's testimony is based on reliable principles and methods; and "(d) the expert has reliably applied the [acceptable] principles and methods to the facts of the case." Fed.R.Civ.P. 702(a)-(d).  Lauzon v. Senco Prods. Co., Inc., 270 F.3d 681, 686 (8th Cir. 2001).

In Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), the Supreme Court interpreted Rule 702 to require district courts be certain that expert evidence based on scientific, technical, or other specialized knowledge is "not only relevant, but reliable."  Id. at 589.  The district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  Id. at 592-93.

Proposed expert testimony must meet three criteria to be admissible under Rule 702.  "First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact.  This is the basic rule of relevancy."  Lauzon, 270 F.3d at 686.  "Second, the proposed witness must be qualified to assist the finder of fact."  Id. "Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires."  Id. (Internal quotation marks omitted).  To meet the third criterion, the testimony must be "based on

sufficient facts or data" and be "the product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." Fed.R.Civ.P. 702(b)-(d).

Under Rule 702, the trial court has the gatekeeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Kimho, 526 U.S. at 141.  "When making the reliability and relevancy determinations, a district court may consider:  (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community." Russell v. Whirpool Corp., 702 F.3d 450, 456 (8th Cir. 2012) (citing Daubert, 509 U.S. at 593-94).  "This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands." Unrein v. Timesavers. Inc., 394 F.3d 1008, 1011 (8th Cir. 2005).  "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." Id.

In general, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Nebraska Plastics, Inc. v. Holland Colors Am., Inc., 408 F.3d 410, 416 (8th Cir. 2005) (quoted case omitted).  However, "if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded." Id.  An expert opinion is fundamentally unsupported when it "fails to consider the relevant facts of the case." Id.

A proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the expert is qualified, that his methodology is scientifically valid, and the reasoning

or methodology in question is applied properly to the facts in issue.  Fed. R. Evid. Rule 702; Barrett v. Rhodia, Inc., 606 F.3d 975, 980 (8th Cir. 2010) (plaintiff bears the burden of showing expert testimony is both reliable and relevant).  The Eighth Circuit has recognized that experts may, at times speculate, "but too much [speculation] is fatal to admission."  Grp. Health Plan, Inc. v. Phillip Morris USA, Inc., 344 F.3d 753, 769 (8th Cir. 2003) (citations omitted).

Courts have recognized that "the whole point of Daubert is that experts cannot 'speculate.' They need analytically sound bases for their opinions.  District courts must be careful to keep experts within their proper scope, lest apparently scientific testimony carry more weight with the jury than it deserves."  DePaepe v. General Motors Corp., 141 F.3d 715, 720 (7th Cir. 1998).

## IV.   Discussion

One World argues that Beard's opinions are unreliable because he did not perform a single test of his opinions, such as testing to determine whether the alternative design, flesh-sensing technology, would have prevented Miravalle's injury or whether this was technologically or economically feasible; he failed to prepare a warning or test the effectiveness of any additional warning; and he relied on facts and data for his opinions which show that the flesh-sensing technology, often referred to as SawStop, has never been used on lightweight entry-level table saws like the Ryobi saw in this case.  In the alternative, One World cites to two product liability table saw cases, alleging defective table saw design due to the absence of flesh-sensing technology, where the experts' opinions were based solely on Dr. Gass' opinions, without conducting additional, independent analysis as in this case, as a basis for excluding Beard's opinions.

12

In his response, Miravalle fails to address the <u>Daubert</u> reliability factors and most of the arguments set forth in One World's motion,[7] and argues that Beard's qualifications, general experience, and experience with table saws qualifies him as an expert, and his opinions should be used and any dispute as to reliability of his opinions goes to the weight, not the admissibility, of his opinions.[8]

In its reply, One World argues that "Plaintiff ignores the requirement of reliability, downplays the significance of the <u>Daubert</u> reliability, and argues that because Beard is (or may be) qualified, his opinions are somehow based on reliable methodology." (ECF No. 80 at 2)

Although Beard appears to be a credentialed expert, his testimony must be excluded regardless of his qualifications because he failed to do any work to determine with any degree of scientific methodology to support his opinions, and consequently, the Court cannot evaluate the reliability of his opinions. <u>Olinger v. U.S. Golf Ass'n</u>, 52 F.Supp.2d 947, 949 (N.D. Ind. 1999) ("To hold that an expert's credentials alone can satisfy the reliability requirement identified in *Daubert* would require the court to ignore the *Daubert* opinion itself, which devoted a fairly lengthy footnote to relating the "impressive credentials" of the experts [whose] opinions were at

---

[7] Miravalle's failure to address the arguments set forth in One World's motion results in Miravalle waiving any response to the arguments. <u>See</u> <u>Ahlberg v. Chrysler Corp.</u>, 481 F.3d 630, 684 (8th Cir. 2007) ("[P]oints not meaningfully argued in an opening brief are waived.").

[8] Miravalle's reliance on <u>Wood</u>, 2015 WL 5638040, in support of allowing an expert to testify regarding the feasibility of incorporating flesh detection technology based entirely on Dr. Gass' opinion is misplaced inasmuch as the <u>Wood</u> Court found that the expert qualified to testify as to the feasibility of incorporating flesh detection technology by finding that "[d]ue to [the expert's] education and experience in mechanical engineering, his review and testing of SawStop saws that include flesh detection technology, and his experience with and consideration of tablesaws without flesh detection technology." <u>Id.</u> at *13. The <u>Wood</u> expert not only examined four table saws as well as a SawStop saw, and completed testing on SawStop saws, he compared the components of each and then detailed what changed he thought needed to be made to the design of the subject saw in order to incorporate the SawStop flesh detection technology. <u>Id.</u> at *2-4.

issue, *see* [*Daubert*] 509 U.S. at 583 n. 2, 113 S.Ct. 2786[,] then never again mentioned [the] extent of expertise among the considerations that might be used to decide whether expert scientific testimony is based on reliable principles.").

### A.  Design Defect Opinion

Beard's design defect opinion is unreliable under <u>Daubert</u> because Beard did no testing to determine whether the flesh-sensing technology either would have prevented Miravalle's injury or was technologically or economically feasible on the Ryobi saw in this case.  Indeed, Beard testified that he watched a SawStop saw being operated, made a few sample cuts, and touched a hot dog against the blade to engage the flesh detection technology.  (Beard Depo. at 73-76)  Beard also failed to provide any test that is capable of peer review or publication that would support his opinions.  Moreover, Beard admitted that he did not know the failure rate for flesh-sensing technology on table saws.  Finally, Beard presented no evidence of general acceptance of the use of flesh-sensing technology with the Ryobi saw or with similar small, lightweight, entry level consumer table saws.

In a recent case, <u>McMahon v. Robert Bosch Tool Corp.</u>, 110 Fed. R. Evid. Serv., 2019 WL 5727340 (E.D. Mo. Nov. 5, 2019) <u>aff'd</u> 5 F. 4th 900 (8th Cir. 2021)  (applying Missouri substantive law), the Court granted a motion to exclude expert testimony under Rule 702 and <u>Daubert</u>, finding that plaintiff's mechanical engineering expert offered no opinions on the adequacy of the warnings in the saw user's manual, and he conducted no testing to establish that the saw was in an unreasonably dangerous condition at the time of its manufacture and sale.  <u>Id.</u> at *3, *6.  Moreover, the Court found that the expert did not show a factual basis to support an opinion that his proposed modifications were feasible or that they would not interfere with the saw's utility, much less that they would have prevented this accident.  <u>Id.</u> at *8.  In its affirmance, the Eighth Circuit found

"'We have recognized that when a plaintiff's sole proof of a defective design is the designer's choice not to pursue a safer design, the evidentiary burden is on the plaintiff to show that the safter alternative design he advocates actually exists.'" McMahon, 5 F. 4th at 905 (quoting Boerner v. Brown & Williamson Tobacco Corp., 260 F.3d 837, 846 (8th Cir. 2001)).

### 1. Lack of Testing

One World argues that Beard's opinions are unreliable because he did not perform a single test to support his opinions that the flesh-sensing technology either would have prevented Miravalle's injury or was technologically or economically feasible on the Ryobi saw.  In his deposition, Beard admitted that he did not perform any testing to support his opinions.  (Beard Depo. at 80-81)

In particular, Beard neither reconstructed Miravalle's incident, nor did he test the viability of flesh-sensing technology in such an incident – with the safety guard removed and the operator standing off to the side of the table while lowering a piece of wood down onto the blade.  (Id. at 12-13, 75)  Beard acknowledged that he had never read anything about anyone testing flesh-sensing technology on a table saw being used like Miravalle at the time of his incident.  Even though Beard admitted that he had never seen flesh-sensing technology installed on any entry level table saw, like the Ryobi saw in this case, he conducted no testing to determine if the technology could feasibly be implemented on such a table saw.  (Id. at 76-77, 81)  Moreover, Beard did not attempt to modify a table saw to test how the flesh-sensing technology works or draft any engineering drawings  showing how the technology could be incorporated into a lightweight, entry level table saw like the Ryobi saw.  (Id. at 77, 80)

Relying solely on Dr. Gass' report, Beard speculated that the flesh-sensing technology would work because the technology is generally "available and could be implemented on different

types of models of table saws."  (Id. 77)  Beard admitted that Dr. Gass did not test his flesh-sensing

technology on the Ryobi saw or any comparable model table saw.  (Id.)

Because Beard neither performed any testing nor other analysis to determine the feasibility

and effect of the proposed alternative design, the Court finds his opinions are unreliable and must

be excluded.  See, e.g., McMahon, 2019 WL 5727340, at *6, 8 (finding that plaintiff's mechanical

engineering expert conducted no testing, and the expert did not show a factual basis to support an

opinion that his proposed modifications were feasible or that they would not interfere with the

saw's utility, much less that they would have prevented this accident).  "[W]hen a plaintiff's sole

proof of a defective design is the designer's choice not to pursue a safer design, the evidentiary

burden is on the plaintiff to show that the safer alternative design he advocates actually exists."

McMahon, 5 F.4th at 905 (internal quotation omitted); Jaurequi v. Carter Mfg. Co., Inc., 173 F.3d

1076, 1084 (8th Cir. 1999) (affirming exclusion of experts' proffered testimony on alternative

designs when they had no prior experience testing or creating such designs, and they "ha[d] not

attempted to construct or even draw the suggested device, much less test its utility as a safety

device or its compatibility"); Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 297-98 (8th Cir.

1996) (excluding testimony of proposed expert on design of tire-changing machine because no

testing ever took place, and no peer review or testimony regarding general acceptance was offered).

But see Phipps v. Mainstream Holdings, Inc., 2017 WL 6383975, at *3 (W.D. Mo. 2017) (finding

"Beard's proposed testimony is distinguishable from the opinions offered in Jaurequi because

Beard evaluated [the tree stand]").

## 2.  Lack of Publication or Peer Review

One World asserts, and is correct, that Beard failed to provide any test that would be

capable of peer review or publication to support his opinion that flesh-sensing technology was

both technologically and economically feasible that would not have affected the utility of the Ryobi saw and would have prevent Miravalle's injury. See Nease v. Ford Motor Co., 848 F.3d 219, 232 (4th Cir. 2017) (without testing, the court found that it would be hardly possible to solicit peer review).

### 3. No Known Rate or Potential Rate of Error

One World asserts that Beard admitted in his deposition that he does not know the failure rate for flesh-sensing technology on table saws, and he performed no feasibility testing on the Ryobi saw. (Beard Depo. at 87-88) One World argues that Beard has not performed any calculations to determine rather the Ryobi saw would be physically strong enough to withstand the force involved by the flesh-sensing technology; and any analysis showing what other design changes would have to be made to the Ryobi saw to include the flesh-sensing technology. (Beard Depo. at 98, 108-09). Although Beard agreed that such design-process work would need to be done, he testified that he was unaware of anyone performing those analyses for the Ryobi saw. (Id. at 99, 108-09) This is significant. The Court agrees that Beard does not know the rate or potential rate of error for flesh-sensing technology on table saws like the one at issue in this case.

### 4. No Evidence of General Acceptance of Theory or Technique

One World points out that Beard has presented no evidence of general acceptance of the use of flesh-sensing technology in the Ryobi saw, a small, lightweight, entry level consumer saw. (Beard Depo. at 37, 76) Indeed, Beard testified that he had never seen flesh-sensing technology installed in a table saw like the Ryobi saw in this case. (Id. at 72, 76, 98) One World notes that "after two decades of product development, SawStop has yet to offer a lightweight, low-cost table saw alternative." (Otterbein Report at 23)

17

### B. Economic Feasibility Opinion

One World argues that Beard's economic feasibility opinion is based on speculation and assumption because Beard assumed the addition of the flesh-sensing component would increase costs by $55.00, basing this opinion on Dr. Gass' opinion without independently determining the cost. (Beard Depo. at 90-91)  Moreover, One World noted that Beard admitted that he had no idea what Dr. Gass did to determine his $55.00 increase in cost.  One World asserts that Beard has failed to confirm that incorporating flesh-sensing technology would not result in creating a new and more expensive table saw, losing its utility as a low-cost, entry-level table saw.

Beard has presented no reliable opinion on the cost and economic feasibility of incorporating flesh-sensing technology in the Ryobi saw, such as evidence showing that this technology has been used in a similar saw as the Ryobi saw.  Moreover, Beard admitted that he does not know what modifications or additional component parts would be required to incorporate the flesh-sensing technology in the Ryobi saw.  (Beard Depo. at 72, 90-91)

### C. Warning Opinions

One World contends Beard's warning opinions are unreliable under <u>Daubert</u> because he failed to draft or propose a warning he believed would have prevented Miravalle's accident, or test the effectiveness of any additional warning.  In his deposition, Beard admitted he has not drafted any revised warnings. (Beard Depo. at 77-78)  In response, Miravalle notes that Missouri law imposes no requirement to draft or propose additional warnings, citing <u>Moore v. Ford Motor Co.</u>, 332 S.W.3d 749 (Mo. banc 2011).[9]

---

[9] Miravalle's reliance on <u>Moore</u> is misplaced because in that case, the plaintiff presented evidence showing that the proposed warnings would have altered her behavior as the individual involved in the accident.  In this case, Miravalle has presented no evidence showing that some additional warning about the danger of contacting the blade while lowering a workpiece onto an unguarded

Beard's failure to draft a proposed alternative warning or test the efficacy renders unreliable his opinion regarding the alleged inadequacy of One World's existing warning to be unreliable. See, e.g., Jaurequi, 173 F.3d at 1084 (excluding expert testimony that "warnings were deficient in placement, design, orientation, and content" as unreliable because "[n]either [expert] had created or even designed a warning device which would have been more appropriate, much less tested its effectiveness"); see also Peitzmeier, 97 F.3d at 297-98 (excluding expert testimony of proposed expert because no testing ever took place, and no peer review or testimony regarding general acceptance was offered); Dhillon v. Crown Controls Corp., 269 F.3d 865, 867 (7th Cir. 2001) (explaining that a failure to design or suggest an alternative warning/instruction that would have been appropriate or testing its effectiveness rendered opinion inadmissible).

Although Beard generally opines that the operator manual should have included instructions on how to make a notch cut or provided warnings stating that this type of cut was prohibited, Beard conceded that he "would not make that type of cut on a table saw," and that "[h]e has other tools available that [he] would use to make that cut." (Beard Depo. at 84).

Having carefully considered the factors relevant to this case, the Court finds that Beard's failure to support his opinion with a proposed warning and to provide a basis for his opinion beyond mere speculation renders his opinion on the issue unreliable.

### D.  Cases Excluding Experts who Relied Solely on Dr. Stephen Gass' Opinions

One World requests, as an alternative basis for excluding Beard's expert testimony, the Court follow two product liability cases alleging defects in table saws because of the absence of

---

saw blade would have made any difference to him.  Indeed, Miravalle admitted that if he contacted a spinning blade with his body, he would be injured.  (Miravalle Depo. at 90)

flesh-sensing technology where the experts relied solely on Dr. Gass' opinions, without conducting additional independent analysis, as in this case.

In excluding the expert's opinions on flesh-sensing technology, finding that the expert's opinions were either unsupported by any personal knowledge or any relevant testing and analysis or not his own opinions, the Eastern District of New York explained as follows:

> [The expert] has not taken any steps to determine that the SawStop technology or any other alternative guarding system that he proposes is feasible.  He has not done any testing of the technology himself; and his opinion is devoid of any analysis pf the compatibility of the technology with the type of saw at issue in the case. … [The expert] … conceded that he did not know if such a portable saw could be engineered with SawStop technology and he admitted that currently there is no such saw with this technology on the market.  In addition, …[the expert's] opinion neglects to consider the expense of this technology, its impact on the ability of the purchaser to utilize the saw for different types of cuts, or the cost of maintenance, which may be significant because … the impact of the technology results in the need to replace the blade mechanism.  In urging [this] as an alternative design, [the expert] conceded that he was relying almost exclusively on the information regarding the technology that he had gleaned from the inventor of SawStop, Dr. Gass.  Although [the expert] relies on statements from Dr. Gass, it is unclear whether the technology has been subject to peer review or generally accepted in the relevant community.

Hilaire v. DeWalt Indus. Tool Co., 54 F. Supp. 3d 224, 249 (E.D.N.Y. Oct. 8, 2014) (internal citations omitted); see also Dixon v. Home Depot, U.S., 2015 WL 2254861, at * 4 (W.D. La. May 13, 2015).

### E.  Summary Judgment

Without the necessary expert testimony, Miravalle has no evidence that a defect in the Ryobi saw was the proximate cause of his injuries.  One World is therefore entitled to summary judgment on Miravalle's claims of strict liability design defect, strict liability failure to warn, and negligent design.  See Pro Serv. Auto, 469 F.3d at 1216; Fireman's Fund Ins. Co. v. Canon, U.S.A., Inc., 394 F.3d 1054, 1062 (8th Cir. 2005).

**V.**     <u>**Conclusion**</u>

For the foregoing reasons, One World's motions to exclude the opinions and testimony of Miravalle's expert witness Ed Beard and for summary judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that One World's Motion to Exclude Proffered Expert Testimony of Ed Beard (ECF No. 69) is GRANTED.

**IT IS FURTHER ORDERED** that One World's Motion for Summary Judgment on All Counts (ECF No. 71) is GRANTED.

A separate Judgment is entered herewith.

Dated this 7th day of December, 2021.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE